AMICA MUTUAL INSURANCE COMPANY *v.* DONNA
WOODS ET AL.
(AC 17150)

Lavery, Spear and Dupont, Js.

Argued February 26—officially released May 19, 1998

*Samuel B. Feldman,* for the appellant (plaintiff).

*Robert M. Fitzgerald,* for the appellees (defendants).

*Opinion*

DUPONT, J. The plaintiff appeals from the judgment for the defendants[1] rendered by the trial court in accordance with the report of an attorney trial referee. The attorney trial referee determined that the plaintiff insurance company was not entitled to recover reparations benefits paid to or for the benefit of the defendant Donna Woods, an insured of the plaintiff, and recommended judgment for the defendants.

The dispositive issue in this appeal is whether the plaintiff's right to reimbursement for basic reparations benefits paid to the defendant insured was extinguished upon the passage of No. 93-297 of the 1993 Public Acts (P.A. 93-297),[2] which repealed, in its entirety, General Statutes § 38a-369.[3] The plaintiff claims that its right

---

[1] The plaintiff's complaint is in two counts and seeks damages from two defendants, the defendant insured and the defendant insured's attorney.

[2] Public Acts 1993, No. 93-297, repealed General Statutes § 38a-369 in its entirety, effective January 1, 1994.

[3] Prior to January 1, 1994, General Statutes (Rev. to 1993) § 38a-369 provided in relevant part: "(a) Except as provided in this section, an insurer does not have, and may not directly or indirectly contract for, any right of subrogation to the proceeds of any cause of action of a recipient of basic reparations benefits against any person or organization not entitled to an exemption from liability under section 38a-368.

was not extinguished, that the trial court's application of P.A. 93-297 to the parties' insurance contract violated the contract clause of the United States constitution and that P.A. 93-297 is unconstitutional. We affirm the judgment of the trial court.

The plaintiff objected to the report of the attorney trial referee on the ground that the ruling "as to the applicable law, how the law applies to the facts as stipulated [was] erroneous." The trial court accepted the report and rendered judgment for the defendant, but did not write a memorandum of decision.[4] At the

"(b) Whenever a person who receives basic reparations benefits for an injury recovers damages, either by judgment or settlement, from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under sections 38a-19 and 38a-363 to 38a-388, inclusive, or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid, minus an amount which represents the insurer's contribution toward attorney's fees for the collection of basic reparations benefits. Such amount shall be computed by multiplying the total amount of such reasonable attorney's fees and costs by a fraction, the numerator of which shall be the amount of basic reparations benefits received by the claimant and the denominator shall be the amount of damages recovered by the claimant, less court costs. In no event shall such amount exceed one-third the amount of the basic reparations benefits to be reimbursed to the insurer. The insurer shall have a lien on the claimant's recovery for the amount to which he is entitled for such reimbursement; provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant. . . ."

[4] The plaintiff did not file a motion to articulate the legal basis for the trial court's judgment and raised no issue in its brief as to the propriety of the trial court adopting the trial referee's conclusions of law. The plaintiff raised the issue at oral argument, and claimed that its broad objection to the trial referee's report included the issue. That objection did not distinctly raise the claim and we need not consider it. Practice Book § 4061, now Practice Book (1998 Rev.) § 60-5. Furthermore, a trial referee may, in addition to finding facts, also include in his or her memorandum of decision recommendations on legal issues. *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 509–11, 508 A.2d 415 (1986). "The [trial] court shall render such judgment as the law requires upon the facts in the report . . . . The reviewing court is the effective arbiter of the law and the legal opinions of [the referee], like those of the parties, though they may be helpful, carry no weight not

time the attorney trial referee heard the case, a stipulation of facts had previously been executed by the parties.[5] No evidence was admitted and no oral argument was sought before the attorney trial referee. The attorney trial referee recommended judgment for the defendants solely on the law as he applied it to the stipulated facts. The parties stipulated to the facts, which were recited in the report of the attorney trial referee.

"1. On or about July 4, 1994, the defendant, Donna Woods was an insured of the plaintiff, pursuant to a policy of automobile insurance . . . .

"2. Said policy of automobile insurance was issued on November 15, 1993 and was in effect for a period of one year through November 15, 1994.

"3. On July 4, 1994 the defendant Donna Woods was injured in an automobile accident.

"4. On or after July 4, 1994, the plaintiff paid to or for the benefit of the defendant Donna Woods certain funds for medical costs and other benefits pursuant to the basic reparations benefits portion of her policy of insurance.

"5. The total amount paid by the plaintiff to the defendant Donna Woods was $ 5,000.00.

"6. Thereafter the defendant Donna Woods reached a settlement with a third party tortfeasor.

"7. The policy of insurance . . . contains a provision . . . entitled 'Our Right to Recover Payment.' This provision gives the plaintiff the right to be subrogated to

justified by their soundness as viewed by the court that renders judgment." Id., 510.

[5] It is not clear from the trial court file or the record whether the reference occurred before or after the stipulation was executed. Ordinarily, a reference to an attorney trial referee when no facts need be found would negate the necessity of such a reference. See *Spears* v. *Kerars Realty Co.*, 171 Conn. 699, 702–703, 372 A.2d 121 (1976).

its insured's rights to recover on a claim against a third person, and obligates the insured to hold in trust the proceeds of the recovery and to reimburse the plaintiff to the extent of its payment.

"8. The policy of insurance . . . also contains a provision under the section entitled 'Reparations Benefits Coverage-Connecticut Section IV Part F.-General Provisions' which states A. The following is added to the Our Right to Recover Payment provisions: OUR RIGHT TO RECOVER PAYMENT Our rights are subject to any applicable limitations stated in the Connecticut Insurance Law."

Each party also filed a trial brief setting forth their claims of law. The plaintiff claimed in its trial brief that it had a right to recover two thirds of the $5000 reparations benefits paid to Woods based on the provisions of § 38a-369 because, although P.A. 93-297 repealed § 38a-369 effective January 1, 1994, the legislation could not retroactively alter the subrogation rights of the plaintiff contained in the existing contract of insurance between the parties. The referee reasoned that because the accident in question did not occur until July 4, 1994, approximately six months after the effective date of P.A. 93-297, the plaintiff "had no vested rights to be affected on January 1, 1994, when § 38a-369 was repealed." Accordingly, the referee stated that the plaintiff's situation was governed by General Statutes § 52-225c, which provides: "Unless otherwise provided by law, no insurer or any other person providing collateral source benefits as defined in section 52-225b[6] shall be entitled to recover the amount of any such benefits from the defendant or any other person or entity as a result of any claim or action for damages for

---

[6] General Statutes § 52-225b provides in relevant part: " 'Collateral sources' means any payment made to the claimant, or on his behalf, by or pursuant to: (1) Any . . . automobile accident insurance that provides health benefits, and any other similar insurance benefits . . . ."

personal injury or wrongful death regardless of whether such claim or action is resolved by settlement or judgment. . . ."

I

The plaintiff first claims that the trial court improperly concluded that the plaintiff's right to recover basic reparations benefits paid to the defendant was extinguished when P.A. 93-297 repealed § 38a-369. We disagree.

Our courts have consistently held that the repeal of existing legislation making a substantive change in the law does not affect *pending claims* or *vested rights* absent some clear intent evidenced by the legislature to do so. See *McNally* v. *Zoning Commission*, 225 Conn. 1, 9, 621 A.2d 279 (1993); *Turner* v. *Turner*, 219 Conn. 703, 712, 595 A.2d 297 (1991); *Gibson* v. *Fullin*, 172 Conn. 407, 412, 374 A.2d 1061 (1977).

The plaintiff had no vested right to recover benefits as of January 1, 1994, because the accident entitling the defendant to benefits, as well as the payment of the benefits to the defendant, occurred after § 38a-369 was repealed. While there was an insurance contract in effect between the parties on January 1, 1994, the plaintiff cites no cases, nor are we aware of any, to support the claim that the existence of an insurance contract creates a pending claim between the parties, or a vested right to recover damages for what has not yet occurred. Furthermore, the insurance policy of the parties provided that the right of the plaintiff to recover payments was subject to "any applicable limitations stated in the Connecticut Insurance Law." An insurer's right to subrogation under an insurance contract cannot arise until after it makes payment under the basic reparations provision of the policy. See *Amica Mutual Ins. Co.* v. *Barton*, 1 Conn. App. 569, 572–73, 474 A.2d 104 (1984). We therefore conclude that when P.A. 93-297

took effect on January 1, 1994, the plaintiff's right to recover reparations benefits paid to the defendant insured was extinguished.

II

The plaintiff also claims in its brief that the application by the trial court of the changes mandated in P.A. 93-297 violated the contract clause of the United States constitution.[7] The constitution of the United States, article one, § 10, provides: "No State shall . . . pass any . . . Law Impairing the Obligation of Contracts . . . ."

Our Supreme Court has recently had an opportunity to review the same federal constitutional provision with respect to another automobile insurance statute, No. 93-77 of the 1993 Public Acts (P.A. 93-77). In *Serrano* v. *Aetna Ins. Co.*, 233 Conn. 437, 664 A.2d 279 (1995), the court was asked to decide whether P.A. 93-77,[8] which

[7] This claim was not made to the trial court. The attorney trial referee obliquely raises it in his report by stating that the plaintiff did not specifically argue an unconstitutional infringement of contract. It is, however, an unpreserved constitutional claim for which there is a record; *State* v. *Newton*, 8 Conn. App. 528, 532–34, 513 A.2d 1261 (1986); and we therefore review it. The principles of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), apply to civil cases. *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 300, 541 A.2d 873 (1988); see *Budlong* v. *Nadeau*, 30 Conn. App. 61, 64, 619 A.2d 4, cert. denied, 225 Conn. 909, 621 A.2d 290, cert. denied, 510 U.S. 814, 114 S. Ct. 62, 126 L. Ed. 2d 31 (1993).

[8] Public Acts 1993, No. 93-77, provides in relevant part: "No insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim be made on the uninsured or underinsured motorist provisions of a motor vehicle policy to a period of less than three years from the date of accident . . . .

"No uninsured or underinsured motorist claim or action pending on December 8, 1992, or brought after said date and prior to the effective date of this act, in which a settlement has not been reached or a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted to arbitration or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by . . . this act."

retroactively modified the uninsured and underinsured provisions of certain automobile liability insurance policies, violated the contract clause of the United States constitution. The trial court had concluded that the contract clause was violated. In that case, the parties had entered into a contract of automobile insurance that required the insured to file an uninsured or underinsured motorist claim within two years of the date of an accident. Id., 440–41. The plaintiff commenced the action for underinsured motorist benefits more than two years from the date of the accident, but within the period provided for in P.A. 93-77, which saved claims that were pending on December 8, 1992, a date prior to the act's effective date. Id., 442.

The Supreme Court held that P.A. 93-77 did not violate either the federal or the state constitution. Id., 445. In so holding, the court noted that " 'a statute does not violate the [c]ontract [c]lause simply because it has the effect of restricting, or even barring altogether, the performance of duties created by contracts entered into prior to its [enactment].' *Exxon Corp.* v. *Eagerton,* 462 U.S. 176, 190, 103 S. Ct. 2296, 76 L. Ed. 2d 497 (1983)." *Serrano* v. *Aetna Ins. Co.,* supra, 233 Conn. 446. Instead, the court determined that in adjudicating a claim that a legislative enactment violates a constitutional contract clause, the court "must first ask whether the change in [the] law has operated as a substantial impairment of a contractual relationship. . . . This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial. . . . If upon application of this test it appears that the challenged legislation substantially impairs existing contract rights, the enactment may nevertheless withstand constitutional scrutiny if it serves a significant and legitimate public purpose . . . ." (Citations omitted; internal quotation marks omitted.) Id., 447. The court

further noted that "[s]everal factors are to be considered in determining the degree to which the challenged enactment operates as an impairment of the parties' contractual relationship. These include the severity of the impairment, the extent to which it frustrates a party's reasonable contractual expectations and the extent to which the subject matter of the impairment has been regulated in the past." (Internal quotation marks omitted.) Id., 448.

Although the *Serrano* court stated that the legislation had a significant impact on the parties' contractual relationship, it determined that, "[i]n view of the highly regulated nature of the insurance industry and the foreseeability of the legislature's remedial action, the defendant, in order to establish a contractual interference of constitutional magnitude, was required to demonstrate that the challenged legislation gave rise to an impairment of overriding severity." Id., 453. Given that the contractual modification effected by P.A. 93-77 "was neither extreme nor extraordinary" and "properly serves a significant and legitimate public purpose," the court concluded that the defendant had failed to meet its heavy burden of establishing a constitutional violation. Id.

As in *Serrano*, the statute in this case is an automobile liability insurance statute. Upon consideration of the relevant factors, including the highly regulated nature of the insurance industry and the resulting foreseeability that a statute may be repealed, we conclude that the defendant has failed to establish that P.A. 93-297, which effectuated a repeal of § 38a-369, operates as a substantial impairment of the plaintiff's contractual rights under article one, § 10, of the United States constitution.

The judgment is affirmed.

In this opinion the other judges concurred.