[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT
The plaintiff filed this action for Declaratory Judgment, to determine if it owes its insured an additional $5000 for Underinsured Motorist Coverage. Plaintiff and defendants each filed Motions for Summary Judgment to determine whether the plaintiff is entitled to a $5,000 credit for payments characterized as "Reparations Plus Benefits" under its motor vehicle insurance policy. The Court holds that the $5,000 that the plaintiff previously paid the defendants was in the nature of basic reparations benefits. The plaintiff may not, however, reduce its underinsured motorist policy limits under section38a-334-6(d)(3) of the Regulations of Connecticut State Agencies. The plaintiff, therefore, must pay the defendants an additional $5000, pursuant to the Underinsured Motorist coverage of the policy.
 FACTS
On June 21, 1995, Heather Waitt ("Waitt") was involved in a CT Page 12588 motor vehicle accident which left her with severe injuries and legally incompetent to handle her own affairs. Waitt was an insured under a policy with the plaintiff, American Manufacturing Mutual Insurance Company. The policy provided for $100,000 in underinsured motorist coverage and $5,000 for "Reparations Plus" coverage. After the accident, Waitt received $25,000 from the negligent party, exhausting the tortfeasor's liability insurance. Waitt also applied for and received $5,000 as "Reparations Plus Benefits". She also received $70,000 in underinsured motorist benefits from the plaintiff under the terms of her own insurance policy. The policy provided that any payments made as reparation benefits by the plaintiff were to be credited toward underinsured motorist benefits under the policy.
The defendants, the parents/guardians of Waitt, seek a total of $75,000 from the plaintiff based on Waitt's underinsured motorist coverage. The plaintiff contends that it only owes the defendants $70,000 under the underinsured motorist benefits portion of the policy, since it is entitled to a credit for the $5,000 it paid as "Reparations Plus Benefits." Both parties have stipulated that the $5,000 paid by the plaintiff to Waitt (or to the defendants) as "Reparations Plus Benefits" was not paid as direct indemnity for medical expenses. Rather, it was paid as "Reparations Plus Benefits" under the policy to reimburse Waitt for lost wages.
On May 12, 1997, the plaintiff filed its complaint seeking a Declaratory Judgment on the issue of whether it is liable to the defendants for the additional $5,000. The plaintiff filed an amended complaint on August 18, 1997. On February 4, 1998, the plaintiff moved for summary judgment and supplied an accompanying memorandum of law arguing that the $5,000 paid as "Reparations Plus Benefits" should be credited against what it must pay in underinsured motorist benefits. The defendants filed a cross-motion for summary judgment, and a memorandum of law in opposition to plaintiff's motion for summary judgment and in support of defendants' cross-motion for summary judgment on March 23, 1998. The plaintiff filed an objection to the defendants cross-motion for summary judgment on May 1, 1998. The defendant filed a reply brief on May 6, 1998.
 DISCUSSION
Our Supreme Court has held that: "Practice Book § [17-49 (formerly § 384)] provides that summary judgment shall be CT Page 12589 rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co.,235 Conn. 185, 202, 663 A.2d 1001 (1995). In the present action, the parties have stipulated to all relevant facts. There is no genuine issue of material fact. In this case either one party or the other is entitled to judgment as a matter of law.
The plaintiff argues that the "Reparation Plus Benefits" payments it made to Waitt are equivalent to basic reparations benefits. The plaintiff contends that when the Connecticut General Assembly repealed its no-fault motor vehicle insurance statutes, basic reparations benefits continued. The plaintiff insists that the Insurance Department did not repeal section38a-334-6 (d)(3) of the Regulations of Connecticut State Agencies when the legislature repealed various sections that referenced basic reparations benefits in the Connecticut General Statutes.
The defendants note that Public Act 93-297 deleted the definition of "basic reparations benefits" from the Connecticut General Statutes. In addition, the defendants claim that the repeal of various no-fault insurance statutes caused basic reparations benefits to lack any legally cognizable meaning. Since the plaintiff's payments could not be basic reparations benefits and the plaintiff has stipulated that the payments were not a direct indemnity for medical expenses, the defendants contend that section 38a-334-6(d)(3) of the Regulations of Connecticut State Agencies is not applicable.
Connecticut General Statutes had defined "basic reparations benefits" as benefits reimbursing persons suffering economic loss through injury arising out of the ownership, maintenance or use of a private passenger motor vehicle under Connecticut's no-fault motor vehicle insurance statutes. C.G.S. (Rev. to 1991) § 38a-363 (k). An "economic loss" under the prior statute included lost wages. See C.G.S. (Rev. to 1991) § 38a-363(k). In this proceeding, the parties stipulated that "Reparations Plus CT Page 12590 Benefits" given to the Waitts were for lost wages. Plaintiff's payments for lost wages were in the nature of basic reparations benefits.
The plaintiff contends that it is entitled to reduce its underinsured motorist policy limits by the $5000 it paid in basic reparations benefits under its insurance policy. Courts have held that an insurer may not by contract reduce its liability for underinsured motorist coverage, except as § 38a-334-6(d) of the Regulations of Connecticut State Agencies expressly authorizes.[1] Zappone v. Nationwide Mutual Ins. Co., Superior Court, Judicial District of Waterbury, Docket No. 122353 (Feb. 25, 1997) (Kulawiz, J.); see Streitweiser v. Middlesex MutualAssurance Co., 219 Conn. 371, 377, 593 A.2d 498 (1991). Subsection (3) of that section provides that an insurer may reduce its underinsured motorist policy limits by the amount of any basic reparations benefits paid to a claimant. Regs., Conn. State Agencies § 38a-334-6(d)(3).[2]
Since the legislature has chosen to repeal statutory provisions concerning the state's no-fault motor vehicle insurance scheme, section 38a-334-6(d)(3) of the Regulations of Connecticut State Agencies has limited applicability today. This Court is aware of two Superior Court decisions after the effective date of Public Act 93-297 (viz: January 1, 1994) which interpreted the terms of § 38a-334-6(d)(3) to allow an insurance company to claim a credit for basic reparations benefits paid. Both Judge Kulawiz and Judge Celotto stated that "[P]ursuant to § 38a-334-6(d)(3), an insurer may provide in the insurance policy for a reduction of its obligation to pay uninsured motorist benefits for the full amount that the insurer has paid as basic reparations benefits." (Internal quotation marks omitted.) Zappone v. Nationwide Mutual Ins. Co., supra, Superior Court, Docket No. 122353 (Kulawiz, J.); Delgreco v.Allstate Insurance Co., Superior Court, Judicial District of New Haven at New Haven, Docket No. 365088, 17 CONN. L. RPTR. 352, (July 23, 1996) (Celotto, J.).
In both cases applying § 38a-334-6(d)(3) after January 1, 1994, (effective date of the statute), the insurer had a vested right to reduce the underinsured motorist policy limitsprior to that date. See Amica Mutual Ins. Co. v. Woods,48 Conn. App. 690, cert. denied, 245 Conn. 916, (1998). Both of these Superior Court decisions relating to § 38a-334-6(d)(3) involve auto accidents that occurred prior
CT Page 12591to the effective date of Public Act 93-297. See Zappone v.Nationwide Mutual Ins. Co., supra, Superior Court, Docket No. 122353 (accident May 8, 1993); Delgreco v. Allstate Ins. Co., supra, Superior Court, Docket No 365088, 17 CONN. L. RPTR. 352 (accident in 1992). Unlike the insurance companies in those actions, the plaintiff's right to recover basic reparations benefits in this action did not vest prior to the effective date of Public Act 93-297, since the accident in this case occurred on June 21, 1995. See Amica Mutual Ins. Co. v. Woods,supra, 48 Conn. App. at 695 (holding that an insurer could not recover basic reparations benefits through subrogation, since insurer had no vested right to reimbursement when the accident occurred on July 4, 1994).
In that decision, the Appellate Court held that an insurance company is not entitled to reimbursement for reparations benefits paid to a claimant, even though the claimant collected damages from a third party tortfeasor. Amica Mutual Ins. Co. v. Woods,supra, 48 Conn. App. 693-96. Under General Statutes (Rev. to 1991) § 38a-369, an insurer was entitled to subrogation, or reimbursement of basic reparations benefits from the claimant, once the claimant recovered damages from the party responsible for an injury (minus an amount for reasonable attorney's fees). With Public Act 93-297, the legislature repealed § 38a-369 of the Connecticut General Statutes (Rev. to 1991). In Amica MutualIns. Co. v. Woods the court reasoned that the repeal of § 38a-369 extinguished an insurer's right to reimbursement for basic reparations benefits paid to an insured after January 1, 1994. Amica Mutual Ins. Co. v. Woods, supra,48 Conn. 695-96.[3]
Similar to the parties in Amica Mutual Ins. Co. v. Woods, the defendants in this case received payments in the nature of basic reparations benefits from the plaintiff. Id. at 693. After receiving reparations benefits from their insurer, the defendant in the Amica Mutual Ins. Co. v. Woods case reached a settlement with a third party tortfeasor. Id. at 693-96. In this case, the defendants collected underinsured motorist benefits from the plaintiff after already having received "Reparations Plus Benefits" under their policy. It would be illogical to treat a subrogation provision in an insurance policy differently from a provision for a policy limit reduction for underinsured motorist coverage. If the court adopted the plaintiff's arguments, the defendants would receive $5000 less coverage than an individual who sues, and later settles, with a third party. This inconsistent CT Page 12592 result did not occur before the repeal of § 38a-369 (C.G.S. Rev. to 1991) and it should not occur today.
 CONCLUSION
The Court grants defendants' Motion for Summary Judgment anddenies the plaintiff's Motion for Summary Judgment. Although the Insurance Department did not repeal section 38a-334-6(d)(3) of the Regulations of Connecticut State Agencies, an insurer may only reduce the limits of any underinsured motorist coverage in the amount of any basic reparation benefits paid, for accidents occurring prior to January 1, 1994. Therefore, the plaintiff is not entitled to a $5,000 credit for the "Reparations Plus benefits" paid to the defendants for this accident, which occurred in June, 1995.
BY THE COURT,
Hon. Jonathan J. Kaplan, J.